**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TOWN OF HEMPSTEAD, DONALD X. CLAVIN JR., in his official capacity as Town Supervisor, BEN JACKSON, and BEN'S GENERAL CONTRACTING CORP., <br><br>  *Plaintiffs*, <br><br> v. <br><br> KATHY HOCHUL, TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, and METROPOLITAN TRANSPORTATION AUTHORITY, <br><br>  *Defendants*. | No. 24 Civ. 08121 (JMA) (ARL) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS METROPOLITAN TRANSPORTATION AUTHORITY AND TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY'S <u>MOTION TO TRANSFER VENUE</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND .................................................................................................................2

      A.  *Hempstead I* (E.D.N.Y.)............................................................................... 2

      B.  *New Yorkers* (S.D.N.Y.)............................................................................... 3

      C.  *Hempstead II* and Plaintiffs' forum shopping ............................................. 4

APPLICABLE STANDARD..................................................................................................6

ARGUMENT .......................................................................................................................8

  I.   The first-filed rule applies and warrants transfer ................................................. 8

  II.  The two-factor inquiry also supports transfer....................................................10

      A.  Plaintiffs could have brought this action in the Southern District .......... 10

      B.  The balance of the equities favors transfer............................................... 11

           1.  Plaintiffs' choice of forum is not entitled to deference......................11

           2.  The interests of justice and judicial economy favor transfer............13

CONCLUSION...................................................................................................................14

Defendants the Triborough Bridge and Tunnel Authority ("TBTA") and the Metropolitan Transportation Authority ("MTA"; collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to transfer this action to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a).

## PRELIMINARY STATEMENT

This is the second action filed by the Town of Hempstead and Town Supervisor Donald X. Clavin Jr. (collectively, "Hempstead") to try to enjoin the Manhattan Central Business District ("CBD") Congestion Pricing Program ("the Program") from going into effect. In the first, filed earlier this year and pending before Your Honor and Judge Lindsay, Hempstead sued Defendants and the Federal Highway Administration ("FHWA") alleging violations of federal and state law. *Town of Hempstead et al. v. Triborough Bridge and Tunnel Authority, et al.*, No. 24 Civ. 3263 ("*Hempstead I*"). On Defendants' motion to transfer venue, Judge Lindsay held that the "first-filed rule" applies because *Hempstead I* substantially overlaps with a previously filed action pending before Judge Cathy Seibel in the Southern District of New York, and she ordered a stay to promote judicial efficiency and avoid inconsistent outcomes. Declaration of R. Kaplan ("Kaplan Decl.") Ex. 1; *see also County of Rockland v. Triborough Bridge & Tunnel Auth.,* No. 24 Civ. 2285 (S.D.N.Y.) ("*Rockland*"). While Judge Lindsay denied Defendants' request to transfer, she did so without prejudice, *i.e.*, subject to renewal if circumstances changed. Kaplan Decl. Ex. 1 at 12.

Circumstances have now materially changed. Hempstead seeks the same relief as before—an injunction against implementation of the Program. But rather than simply amend its complaint and request preliminary injunctive relief in *Hempstead I*, which would have of course warranted a renewed motion to transfer venue in that case, Hempstead opted to bring an entirely new lawsuit

1

in Nassau County Supreme Court, asserting only "state law" claims and refraining from naming the federal government participants in the Program as defendants.  Hempstead's attempt to avoid the Court's jurisdiction and its prior ruling should be rejected.  As set forth in Defendants' opposition to Plaintiffs' motion to remand, this action was properly removed to this Court.  And for essentially the same reasons as explained in Judge Lindsay's Order, transfer of this case is appropriate because there is a first-filed action—this time pending before Judge Lewis Liman in the S.D.N.Y., *New Yorkers Against Congestion Pricing Tax*, *et al.*, *v. United States Department of Transportation, et al.*, No. 24 Civ. 367 ("*New Yorkers*").  In both this case and *New Yorkers*, the plaintiffs assert that Defendants have violated Sections 201 and 202 of New York's State Administrative Procedure Act ("SAPA") in connection with the Program, and in both cases, the plaintiffs request declaratory and injunctive relief.  The cases thus clearly have "substantial overlap." Kaplan Decl. Ex. 1 at 7.  What's more, Hempstead seeks emergency injunctive relief, and Judge Liman recently set a schedule to hear preliminary injunction motions on the materially similar SAPA claims in *New Yorkers*.  Accordingly, the policies underlying the first-filed rule readily justify an order transferring this case to the S.D.N.Y., where Plaintiffs' claims can be considered on an expedited schedule, with the least burden on the court system and no risk for inconsistent outcomes.

## BACKGROUND[1]

### A.  Hempstead I

Hempstead began its efforts to stop the Program in May of this year with the filing of *Hempstead I* in this Court, where it asserts claims for violations of the New York and U.S.

---

[1] Given the Court's familiarity with the history of the Congestion Pricing Program, Defendants recite only those facts relevant to deciding the present motion.  In deciding a motion to transfer, a court may consider "materials outside the pleadings." *Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 176 (E.D.N.Y. 2003).

2

Constitutions and 23 U.S.C. § 301, and seeks injunctive and declaratory relief to block implementation of the Program. Kaplan Decl. Ex. 2 ¶¶ 79-80. Defendants moved to transfer *Hempstead I* to the S.D.N.Y., where there is an earlier-filed related case pending before Judge Seibel, *Rockland*. Kaplan Decl. Ex. 3 ¶ 79. In an order dated October 8, Judge Lindsay agreed that *Hempstead I* and *Rockland* involved "substantially similar" parties asserting "substantially duplicative constitutional claims." Kaplan Decl. Ex. 1 at 7, 11. As a result, Judge Lindsay stayed *Hempstead I* pending resolution of impending motions to dismiss in *Rockland*. *Id.* at 7, 12. *Hempstead I* did not raise claims under SAPA.

**B.     New Yorkers**

On January 18, 2024, New Yorkers Against Congestion Pricing Tax, along with certain individuals, commenced a putative class action seeking declaratory and injunctive relief to block implementation of the Program. Kaplan Decl. Ex. 4. *New Yorkers* asserts that the defendants failed to comply with Sections 201-a and 202-b of SAPA, which require, for what are denominated as "Type I rules," an assessment of job impacts and regulatory flexibility for small businesses resulting from the Program to be completed before implementation. *Id.* ¶¶ 111-116; Kaplan Decl. Ex. 5 ¶¶ 127-132. According to the *New Yorkers* plaintiffs, implementation of the Program absent that assessment was an arbitrary and capricious abuse of discretion. Kaplan Decl. Ex. 5 ¶ 179.

On March 18, the defendants filed a partial motion to dismiss in *New Yorkers*, including for dismissal of the SAPA claims because they had not yet issued a "final" rule subject to judicial review and the claims were accordingly unripe. Kaplan Decl. Ex. 6 at 10. In the alternative, the defendants argued that the SAPA claims failed as a matter of law because any adoption of the Program would be issued under Section 102(2)(a)(ii) of SAPA and thus would be a "Type II" rule not subject to the requirements of Sections 201-a and 202-b . *Id*. at 12-13. Judge Liman granted the defendants' motion to dismiss the SAPA claims without prejudice on ripeness grounds,

3

concluding that no claim could proceed until the TBTA adopted the final toll structure and filed it with the Secretary of State for publication. *Mulgrew v. United States Dep't of Transportation*, 2024 WL 3251732, at *18 (S.D.N.Y. June 20, 2024). Following adoption and publication of the rule, the plaintiffs in *New Yorkers* have stated their intent to renew their claims under SAPA, and Judge Liman has issued a scheduling order directing the plaintiffs to file any related motions for summary judgment or a preliminary injunction by December 2, 2024, with such SAPA-related motions to be fully briefed by December 17 and argument to occur on December 20. Kaplan Decl. Ex. 7 at 2.

C.  ***Hempstead II* and Plaintiffs' forum shopping**

Nearly seven months after they filed *Hempstead I*, and nearly a year after the filing of *New Yorkers*, Hempstead, along with new Plaintiffs Ben Jackson and his company Ben's General Contracting Corp., commenced this action seeking "emergency" relief in New York State Supreme Court, Nassau County (the "Nassau Action"). ECF 1-1.[2] The complaint asserts claims against Governor Kathy Hochul and the Defendants. *Id.* ¶¶ 8-10. In their first cause of action, Plaintiffs allege that the MTA Defendant's adoption of the Congestion Pricing Toll Schedule on November 18 did not comply with certain notice and assessment requirements of Sections 202, 202-a, 202-b, 202-bb and 201-a of SAPA, including the small-business and job impact statement requirements asserted in *New Yorkers* (§§ 202-a and 201-a). *Id.* ¶¶ 46-59. As to the SAPA claim, the material inquiry in both this case and *New Yorkers* is whether the MTA Defendant's implementation of the program constitutes a "Type I" or "Type II" regulation under SAPA § 102(2)(a). *Compare id.* ¶ 63 *with* Kaplan Decl. Ex. 9 at 21-22.

---

[2] Plaintiffs' counsel advised Defendants of their plans to bring a subsequent suit the day before they filed the complaint in Nassau Supreme Court and stated that they intended to bring a motion for a temporary restraining order in less than twenty-four hours. Kaplan Decl. Ex. 8.

4

Both cases also involve overlapping defendants. *Compare* ECF 1-1 ¶¶ 14-15, *with* Kaplan Decl. Ex. 5 ¶¶ 68-69. Both cases seek to enjoin the toll's implementation and vacate previous determinations by the Defendants. *Compare* ECF 1-1 ¶¶ 60-62, 82-83 *with* Kaplan Decl. Ex. 5 at 56. And both cases assert certain identical SAPA violations, and to the extent that *Hempstead II* asserts new SAPA violations, those claims still turn on the initial issue as to whether Sections 102(2)(a)(i) or (a)(ii) of SAPA apply to the Program. *Compare* ECF 1-1 ¶ 63 *with* Kaplan Decl. Ex. 9 at 21-22. The chart below highlights these similarities, with overlapping claims and defendants in bold and italicized font.

| CASE | COURT | DATE FILED | CLAIMS | DEFENDANTS |
|---|---|---|---|---|
| *Hempstead II* | E.D.N.Y. | 11/22/2024 | ***Violation of SAPA §§ 202, 202-a, 202-b, 202-bb and 201-a***<br><br>Ultra Vires Claim Against the Governor<br><br>***Injunctive and Declaratory Relief*** | ***Metropolitan Transportation Authority***<br><br>***Triborough Bridge and Tunnel Authority***<br><br>Governor Kathy Hochul |
| *New Yorkers* | S.D.N.Y. | 1/18/2024 | Violation of the National Environmental Policy Act<br><br>Violation of NEPA (failure to supplement claim)<br><br>***Violation of SAPA (§§ 201-a, 202-b)***<br><br>***Declaratory, Injunctive,*** and Equitable ***Relief*** | ***Metropolitan Transportation Authority***<br><br>***Triborough Bridge and Tunnel Authority***<br><br>U.S., NY, & NYC Departments of Transportation<br><br>Shailen Bhatt (as Div. Administrator at the FHWA)<br><br>Traffic Mobility Review Board |

5

## **APPLICABLE STANDARD**

Where two cases substantially overlap, the "first-filed rule" creates a strong presumption that the first-filed case will take priority, and that the second-filed case should be dismissed, transferred, or stayed. Order at 6; *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 274 (2d Cir. 2008). To determine whether the first-filed rule applies, courts consider whether the parties in both suits have "substantially similar parties and claims." Kaplan Decl. Ex. 1 (quoting *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012)). The rule "does not require identical parties," and the "core question is whether there are common violations of law alleged." *Id.* (quoting *Liberty Mut. Ins. Co. v. Fairbanks*, 17 F. Supp. 3d 385, 393 (S.D.N.Y. 2014)). Claims substantially overlap if they "aris[e] out of the same transactions," even if they "rely on different legal theories." *Id.* at 8. Where the first-filed rule applies, the Southern District applies a "bright-line rule" that "[t]he court before which the first-filed action was brought determines which forum will hear the case." *Id.* at 10 (quoting *MSK Ins., LTD. v. Employers Reins. Corp.*, 212 F.Supp.2d 266, 267 (S.D.N.Y. 2002)). The Eastern District applies a similar standard. *See id.* at 11 (citations omitted).

Even if the first-filed rule does not apply, transfer can be appropriate under a two-step inquiry that looks to "whether the action … might have been brought in the transferee court" and "whether considering the convenience of the parties and witnesses, and the interest of justice, a transfer is appropriate." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 28 (E.D.N.Y. 2014) (quotations omitted). Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation and internal quotation marks omitted); *accord D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

6

Where, as here, a defendant seeks a transfer from the Eastern District to the Southern District, courts in this District generally consider two factors: (1) the deference owed, if any, to the plaintiff's choice of forum; and (2) the interest of justice and judicial economy. *See Lipshutz v. Costello*, No. 22 Civ. 4547, 2023 WL 3073517, at *2 (E.D.N.Y. Apr. 25, 2023) (Kovner, J.); *see also Wald v. Bank of Am. Corp.*, 856 F. Supp. 2d 545, 549 (E.D.N.Y. 2012) (Vitaliano, J.) (collecting cases).[3]

When evaluating the level of deference owed to the plaintiffs' choice of forum, courts afford less deference where circumstances "indicate forum-shopping" including, "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case" and "plaintiff's popularity or the defendant's unpopularity in the region." *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 451 (S.D.N.Y. 2008) (quoting *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001)). When evaluating the judicial economy factor, "courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy, and may be determinative." *Delta Air Lines, Inc. v. Ass'n of Flight Attendants, CWA*, 720 F. Supp. 2d 213, 219 (E.D.N.Y. 2010) (quotations omitted). In fact, courts regularly grant transfer requests between the two Districts where, as here, there are substantially overlapping claims against overlapping defendants pending in the other, despite granting some deference to the plaintiffs' choice of forum. *See, e.g.*, *Lipshutz*, 2023 WL 3073517, at *4; *Neske v. NYC Dep't of Educ.*, No. 20 Civ. 4801, 2021 WL 5712075, at *2 (E.D.N.Y. Dec. 2, 2021) (Komitee, J.); *Wald*, 856 F. Supp. 2d at 551.

---

[3] These derive from the Second Circuit's multi-factor test in *D.H. Blair*, 462 F.3d at 106-07, but courts tend to focus on just these two because the short distance between the Eastern and Southern Districts renders the remaining factors neutral, *Wald*, 856 F. Supp. 2d at 549.

7

## **ARGUMENT**

The first-filed rule strongly supports transfer of this case to the S.D.N.Y. This action substantially overlaps with *New Yorkers*, and under the circumstances—where Plaintiffs seek emergency relief here and Judge Liman has already set a schedule for expedited motion practice—transfer, as opposed to a stay, is appropriate. Moreover, even if the first-filed rule did not apply, the same interests in judicial economy and avoiding inconsistent outcomes, and Plaintiffs' obvious efforts at forum shopping, support transfer under *Mazuma Holding*'s two-step inquiry.

### I.   The first-filed rule applies and warrants transfer

There is no real dispute that this action substantially overlaps with *New Yorkers* in terms of the parties, claims asserted, and relief sought, and so the first-filed rule applies.

First, this action and *New Yorkers* both involve claims against the MTA and the TBTA. *Compare* ECF 1-1 ¶¶ 14-15, *with* Kaplan Decl. Ex. 5 ¶¶ 68-69. While the cases have different plaintiffs, an exact match of the parties is not required, particularly where (as here) there is similar overlap over the claims and relief sought. *Wyler-Wittenberg*, 899 F. Supp. 2d at 244 (finding parties were substantially similar where the same institutional defendant was sued in multiple actions involving similar claims, despite the addition of seventy-five new plaintiffs in subsequent litigation). As in *Wyler-Wittenberg*, *New Yorkers* involves a class action complaint with numerous individual plaintiffs absent from *Hempstead II*, but it asserts similar (and sometimes identical) claims against the same institutional defendants as in this case. While *New Yorkers* has some thirty-odd more plaintiffs, that is the nature of a class action complaint—and as in *Wyler-Wittenberg*, the institutional defendants are the same in both actions. That substantial overlap in parties supports application of the first-filed rule.

Second, the claims in this case and *New Yorkers* substantially overlap. Clearly, the claims "arise out of the same transactions." *Fit & Fun Playscapes, LLC v. Sensory Path, Inc.*, 2022 WL

8

118257 (S.D.N.Y. Jan. 12, 2022). Judge Lindsay confronted this issue in resolving Defendants' motion to transfer in *Hempstead I*. There, one case sought declaratory and injunctive relief, while the other sought only injunctive relief, but since both cases fundamentally "ar[o]se out of the [Defendants'] adoption of the [Congestion Pricing] Plan," those differences were immaterial. Kaplan Decl. Ex. 1 at 9. So too here, both suits seek declaratory and injunctive relief to prevent implementation of the Program, *compare* ECF 1-1 ¶¶ 60-62, 82-83 *with* Kaplan Decl. Ex. 5 at 56, and *New Yorkers*'s additional request for equitable relief does not change the fact that both cases "arise out of the [] Defendants adoption of the Program," *see* Kaplan Decl. Ex. 1 at 9.

Even if the additional SAPA provisions invoked by the *Hempstead II* Plaintiffs were deemed to constitute new legal theories, that would not change the analysis. The SAPA claim asserted against Defendants in this action either entirely overlaps (as to Section 201-a, 202-a) or is otherwise dependent on the same determination: whether Section 102(2)(a)(i) or (a)(ii) of SAPA applies to the Program's promulgation by TBTA of its toll rate schedule regulation, and whether, accordingly, any additional requirements of Sections 201 and 202 apply. *Compare* ECF 1-1 ¶ 63 *with* Kaplan Decl. Ex. 9 at 21-22. Indeed, this substantial overlap raises significant risks that a decision in *New Yorkers* would have a direct impact on this case and that allowing both actions to proceed—on emergency injunctions—could create inconsistent outcomes. As Judge Lindsay observed, "avoiding inconsistent results in related actions can be decisive, even when most [other] factors would ordinarily sustain a plaintiff's choice of forum." Kaplan Decl. Ex. 1 (quoting *JetBlue Airways Corp. v. Helferich Pat. Licensing, LLC*, 960 F. Supp. 2d 383, 400 (E.D.N.Y. 2013)).

Because this case substantially overlaps with *New Yorkers*, the Court should apply the first-filed rule and either transfer this case to the S.D.N.Y. so that Plaintiffs' claims can be heard alongside *New Yorkers*, on the same schedule, or stay this case pending resolution of the

9

forthcoming motions for preliminary injunctive relief. *Santana v. Cavalry Portfolio Servs., LLC*, No. 19 Civ. 3773, 2019 WL 6173672, at *5 (S.D.N.Y. Nov. 19, 2019). Defendants respectfully submit that a transfer is more appropriate under the circumstances. Unlike in *Hempstead I*, Plaintiffs seek immediate injunctive relief—and specifically a determination before the Program is implemented on January 5, 2025. Transferring this action to Judge Liman will make it more likely that Plaintiffs' request can be heard on an expedited schedule with the least burden on the judiciary and the parties. By contrast, if the Court were to stay this action pending resolution of the motions for preliminary injunctive relief before Judge Liman, the parties would presumably need to engage in supplemental briefing as to the effect of that decision—which we expect would be issued soon after the December 20 hearing—right in the middle of the busy holiday season.

## II. The two-factor inquiry also supports transfer

Even if the Court concludes that the first-filed rule does not apply, transfer is still warranted under the two-step inquiry of *Wald v. Bank of Am. Corp.*, 856 F. Supp. 2d at 549.

### A. Plaintiffs could have brought this action in the Southern District

First, Plaintiffs of course could have filed this case in the Southern District of New York, as a matter of both jurisdiction and venue. Subject matter jurisdiction does not change if this case is heard in the Southern as opposed to the Eastern District. And under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." These provisions permit venue in the Southern District because that is where "a substantial part of the events or omissions giving rise to the claim occurred." *Id.* §§ 1391(b)(2), 1391(e)(1). The Complaint, which challenges the Program's implementation in Manhattan's CBD, is replete with references to actions or locations within the Southern District of New York. *See e.g.*, ECF 1-1 ¶¶ 15, 17, 20, 27, 30, 33 65. Considering similar circumstances in another case seeking to enjoin the Program, Magistrate Judge Marutollo concluded that, "at

10

bottom, Plaintiffs' entire challenge is rooted in claims arising in the Southern District of New York." *Mulgrew*, 717 F. Supp. 3d at 287.

### B.     The balance of the equities favors transfer

#### 1.     Plaintiffs' choice of forum is not entitled to deference

The deference that courts ordinarily extend to a plaintiff's forum selection is diminished where the operative facts are not meaningfully connected to the chosen forum, even if the plaintiffs otherwise reside in their chosen forum. *Farrior v. George Weston Bakeries Distrib., Inc.*, No. 08 Civ. 2705, 2009 WL 113774, at *3 (E.D.N.Y. Jan. 15, 2009) (Bianco, J.); *see also Cruz v. Borgenicht*, No. 14 Civ. 679, 2014 WL 3696207, at *2-3 (E.D.N.Y. July 24, 2014) (Irizarry, J.); *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 251 & n.3 (E.D.N.Y. 2010) (Bianco, J.) (collecting cases). "To ascertain the locus of operative facts, courts look to the site of the events from which the claim arises." *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 460 (E.D.N.Y. 2013) (Bianco, J.) (internal quotation marks omitted); *see also Bank v. N.Y. State Dep't of Agric. & Markets*, No. 20 Civ. 6191, 2021 WL 2012405, at *4-5 (E.D.N.Y. May 20, 2021) (Matsumoto, J.).

Here, the "site of the events" from which Plaintiffs' claims arise is the Manhattan CBD. Plaintiffs' statutory claims concern a Project that will be implemented and operated solely within Manhattan. N.Y. Veh. & Traf. Law § 1704(2). Accordingly, the locus of operative facts is the Southern District, not the Eastern District, and therefore Plaintiffs' choice of forum is not entitled to any significant weight. *See, e.g.*, *Stark*, 2024 WL 48139, at *5 (finding plaintiff's choice "not entitled to great weight because the operative facts [were] not tied to this district" and transferring case); *Debellis v. Soloman*, No. 19 Civ. 4408, 2019 WL 4393652, at *2 (E.D.N.Y. Sept. 13, 2019) (Cogan, J.) (transferring from Eastern District to Southern District where "all the events giving rise to" plaintiff's claims occurred in latter); *Study Logic, LLC v. Farmer Bros. Co.*, No. 18 Civ. 1645, 2019 WL 3412114, at *5 (E.D.N.Y. July 29, 2019) (Dearie, J.) (transferring venue even

11

though plaintiff sued in home forum because, *inter alia*, the "[t]he events leading to the cause of action took place" in the transferee district).

The case for venue in the Southern District is even stronger here than it was in *Hempstead I*. Whereas the *Hempstead I* Plaintiffs could argue that the Eastern District housed bridges and tunnels that would host Program infrastructure on the Manhattan side, Plaintiffs' "chosen" forum here was actually the Nassau County Supreme Court—a forum entirely detached from any of the Program's infrastructure. *See* Kaplan Decl. Ex. 10 at 11.[4]

Plaintiffs' choice of forum is also not entitled to deference because there are significant circumstances indicating that Plaintiffs are engaged in forum shopping. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 155 (2d Cir. 2005). First, Plaintiffs could have sought leave to assert these claims in the still-pending *Hempstead I*, or to intervene in the long-pending *New Yorkers*. Instead, Plaintiffs elected to commence a new action in state court, in a forum that was even more detached from the Program than this District, which they chose in *Hempstead I*. After making that decision, Plaintiffs advised Defendants *the night before they filed suit* of their intention to file a new state court action seeking "emergency" relief the next morning. Kaplan Decl. Ex. 8. The reason for these tactics is obvious. While Plaintiffs allege that they "rely" on their proximity to "Manhattan below 60th Street," ECF 1-1 ¶ 20, it is clear that the Nassau Action is tailored to rely on "plaintiff's popularity [and] the defendant's unpopularity in the region" to extract a favorable

---

[4] Even in *Hempstead I*, Plaintiffs did not have a compelling case for why venue was proper in this District. *See* Kaplan Decl. Ex. 10 at 11 (citing *Doe v. New York*, 2012 WL 4503409, at *5 (E.D.N.Y. Sept. 28, 2012) (finding venue was proper in this District where unlawful policy was promulgated in Northern District of New York but implementation of the policy occurred here)) and *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992) (finding forum was proper wherever Plaintiff asserting Fair Debt Collection Practices Act claims received a debt-collection notice, because claim under FDCPA accrues when a violating notice is received.) Plaintiffs' theory of venue opposing transfer in *Hempstead I*— that receipt of a bill from the MTA in a district renders it a proper venue to challenge the Program—would allow a one-time tourist from Anchorage to sue in the District of Alaska upon receipt of a $9 toll charge. The case for venue in Nassau County is even further afield.

ruling. *See Maersk, Inc*, 554 F. Supp. 2d at 451. The first paragraph of the *Hempstead II* complaint frames the case as a conflict between Governor Hochul and the President-elect's Tweeted intention to "kill" congestion pricing. ECF 1-1 ¶1. One need not read between the lines to see that Plaintiffs' primary goal in filing the Nassau Action was political expediency over judicial efficiency. In fact, the complaint refers to the President-elect by name at least nine times, even though it does not contain a single allegation indicating the legal relevance of who the President-elect is to Plaintiffs' SAPA or ultra-vires claims. *See id.* ¶¶ 1, 35, 39, 43, 45, 62, 63. In support of their motion for a temporary restraining order, Plaintiffs conclude by stating that the Governor's efforts to enact a program, which has been the subject of extensive study since 2019, "flout the outcome of the [2024] election and prevent the democratically elected President from implementing his mandate to govern." ECF 6-4. In reality, it is Plaintiffs who seek to flout the policy preferences of generations of legislators at the Federal and State level, from the 1991 Congress that passed the Intermodal Surface Transportation Act establishing the Congestion Pricing Pilot Program, to the 2019 New York State Legislature which passed the MTA Reform and Traffic Mobility Act. 23 U.S.C. § 175; N.Y. Veh. & Traf. Law §§ 1701, 1704. Plaintiffs' tactics and improper motivations should not be condoned, and they are an additional reason to transfer this case. *See Neske,* 2021 WL 5712075, at *2 (declining to defer to Plaintiffs' chosen forum where second filed suit was initiated after adverse rulings in other federal actions, indicating forum shopping.)

### 2. The interests of justice and judicial economy favor transfer

The interests of justice and judicial economy also weigh decisively in favor of transfer of this case to the Southern District. "Courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy." *Wald*, 856 F. Supp. 2d at 550 (cleaned up). In fact, it "can be 'decisive.'" *Id.* Thus, when transferring cases to the Southern District, courts in this District routinely cite the existence of

13

pending related actions in the Southern District as a primary reason for ordering the transfer. *See, e.g.*, *Schwartz v. Concordia Int'l Corp.*, 255 F. Supp. 3d 380, 393 (E.D.N.Y. 2017) (Garaufis, J.); *Sati v. Wells Fargo Ins. Servs., Inc.*, No. 16 Civ. 2573, 2016 WL 7116069, at *2 (E.D.N.Y. Dec. 5, 2016) (Spatt, J.); *St. John's Univ. v. Certain Underwriters at Lloyd's*, No. 10 Civ. 4465, 2010 WL 11713184, at *1 (E.D.N.Y. Nov. 24, 2010) (Weinstein, J.). Plaintiffs brought this case seeking "emergency relief," and the fastest and most efficient way to have their claims adjudicated (for both the parties and the courts) is to transfer this case to the S.D.N.Y., where overlapping requests for relief premised on overlapping claims are already proceeding to an expedited resolution.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this action be transferred to the Southern District of New York, where it may be considered in coordination with the *New Yorkers* case pending before Judge Liman in that court.

Dated: New York, New York
November 29, 2024

Respectfully submitted,

*/s/ Roberta A. Kaplan*

Roberta A. Kaplan
D. Brandon Trice
Maximilian T. Crema
Kaplan Martin LLP
156 West 56th Street, Suite 207
New York, New York 10019
Telephone: (212) 316-9500
rkaplan@kaplanmartin.com
btrice@kaplanmartin.com
mcrema@kaplanmartin.com

*/s/ Elizabeth Knauer*

Elizabeth Knauer
SIVE, PAGET & RIESEL, P.C.
560 Lexington Avenue, 15th Floor

14

New York, New York 10022
(212) 421-2150
eknauer@sprlaw.com

*Counsel for Defendants the Metropolitan Transportation Authority and the Triborough Bridge and Tunnel Authority*

15