UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
TOWN OF HEMPSTEAD, DONALD X. CLAVIN JR.,
BEN JACKSON, and BEN'S GENERAL
CONTRACTING CORP.,

                                                    Plaintiffs,

                -against-

KATHY HOCHUL, TRIBOROUGH BRIDGE AND
TUNNEL AUTHORITY, and METROPOLITAN
TRANSPORTATION AUTHORITY,

                                                    Defendants.
-----------------------------------------------------------------------X

(For Electronic Publication Only)

**MEMORANDUM & ORDER**
24-cv-08121 (JMA) (ARL)

FILED
CLERK
12/19/2024 11:56 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

      Before the Court is Plaintiffs' motion to remand this action to New York State Supreme Court. Plaintiffs filed their complaint in state court alleging that Defendants Kathy Hochul, Triborough Bridge and Tunnel Authority ("TBTA"), and Metropolitan Transportation Authority ("MTA") violated state law in approving a revised congestion pricing toll (the "Program") to be implemented in the Central Business District of Manhattan ("CBD"). (See Complaint, ECF No. 1-1.) In their state court complaint, Plaintiffs sought a declaration that the Program is unlawful as well as a temporary restraining order and permanent injunction to prevent its implementation. (Compl. ¶¶ 3, 82-83.) Defendants removed this case to federal district court, arguing that it "necessarily raises disputed and substantial federal questions." (See Not. of Removal at 4-5, ECF No. 1.) Plaintiffs then filed an emergency motion to remand, arguing that the state court complaint "asserts purely state law claims" against Defendants. (See Pls.' Mot. at 1, ECF No. 5.) For the reasons discussed below, Plaintiffs' motion to remand is GRANTED.

I.     BACKGROUND[1]

In 2019, New York enacted the MTA Reform and Traffic Mobility Act ("TMA"), which authorized the TBTA to establish and implement a plan for tolling vehicles that enter or remain in the CBD. (Not. of Removal ¶ 3.); see also N.Y. Veh. & Traf. Law §§ 1701, 1704-a. The TMA grants the TBTA "the power, subject to agreements with its bondholders, and applicable federal law to establish and charge variable tolls and fees" and "the power, subject to agreements with its bondholders, and applicable federal law to make rules and regulations for the establishment and collection of central business district tolls, fees, and other charges." N.Y. Veh. & Traf. Law §1704-a(1).[2]

In June 2019, an Expression of Interest was submitted to the Federal Highway Administration under the federal Value Pricing Pilot Program by New York State through the New York State Department of Transportation, the TBTA, and the New York City Department of Transportation. (Not. of Removal ¶ 5.) Through the Value Pricing Pilot Program, the Federal Highway Administration can authorize state and local governments to implement congestion pricing programs on roads within the national highway system. (Id.) The June 2019 Expression of Interest initiated a four-year process of environmental review required for approval under federal law. (Id. ¶ 6.)

In March 2024, the TBTA adopted a toll rate schedule for charging all vehicles, apart from taxis and for-hire vehicles, a toll upon entry into the CBD. (Id. ¶ 7.) For passenger vehicles, the peak-period entry charge would be $15.00. (Id.) On June 5, 2024, Governor Hochul directed a

---

[1] This Memorandum and Order draws its facts from Defendants' Notice of Removal (ECF No. 1 ("Not. of Removal")); Plaintiffs' State Court Complaint (ECF No. 1-1 ("Compl.")); Plaintiffs' Motion for Remand (ECF No. 5 ("Pls.' Mot.")); Defendants' Opposition to Plaintiffs' Motion for Remand (ECF No. 13 ("Defs.' Mot.")); and Plaintiffs' Reply in Support of their Motion to Remand (ECF No. 21 ("Pls.' Repl.")).

[2] See also VTL § 1704(3)(b) (The TBTA "shall . . . plan, design, install, construct and maintain a central business toll collection system and implement and operate the same to collect the central business district toll.").

pause of implementation of the Program, which had been scheduled to be implemented in or about that same month. (Id. ¶ 8; Defs.' Opp. at 5.) Then, on November 14, 2024, Governor Hochul announced that she was "unpausing" the Congestion Pricing Plan and implementing a $9 principal toll that would rise to a $15 principal toll over a six-year period. (Compl. ¶¶ 40-43.) On November 18, 2024, the TBTA Board met and approved this revised version of the Program with the lower toll rate and the phase-in approach for tolls. (Not. of Removal ¶ 10.) The New York State Department of Transportation, New York City Department of Transportation, and the TBTA then prepared a second reevaluation consistent with the Federal Highway Administration's regulations to assess the effects of the revised toll structure. (Defs.' Opp. at 6.) On November 21, 2024, the Federal Highway Administration approved the reevaluation assessing the effects of the revised toll rate and signed an agreement with the New York State Department of Transportation, New York City Department of Transportation, and the TBTA authorizing the Program's collection of tolls. (Id.)

Plaintiffs commenced this action on November 21, 2024, instituting an "emergency challenge" to Defendants' alleged "illegal adoption" of the revised "Congestion Pricing Toll Schedule for the Central Business District."[3] (Compl. ¶ 1.) The complaint alleges that the "toll will directly and heavily negatively impact the residents, businesses, and local government of the plaintiffs." (Id.)

Plaintiffs' state court complaint asserts three causes of action seeking to invalidate the adoption of the Program by the TBTA Board on November 18, 2024.[4] First, the complaint asserts

---

[3] The CBD is defined as the area south and inclusive of 60th Street, but excluding FDR Drive and the West Side Highway. N.Y. Veh. & Traf. Law § 1704(2).

[4] The Program is also currently the subject of ten lawsuits in the Southern and Eastern Districts of New York and the District of New Jersey, including Town of Hempstead et al. v. Triborough Bridge & Tunnel Authority et al., 24-cv-3263 (E.D.N.Y.), which is pending before this Court. In addition, two other lawsuits have been filed in New York Supreme Court, New York County: Riders Alliance et al. v. Hochul et al., Index No. 156711/2024 (Sup. Ct., N.Y. Cnty.); and City Club of New York et al. v. Hochul et al., Index No. 156696/2024 (Sup. Ct., N.Y. Cnty.).

3

a cause of action under New York State Administrative Procedures Act ("SAPA") §§ 202, 202-a, 202-b, 202-bb, 201-a, and 205. (Compl. ¶¶ 53-63.) This claim primarily alleges that the November 18, 2024 adoption of the Program violated SAPA's rulemaking requirements regarding waiting periods, notices, and publication in the State Register. (Id.) Second, the complaint asserts a cause of action claiming that Governor Hochul usurped the TBTA's statutory authority to set the terms of the Program under the TMA. (Id. ¶¶ 65-79.) This claim alleges that "[n]either the TMA nor any other provision of law" grants the Governor the authority to implement or set the terms of the Program and that her November 2024 actions usurped the TBTA's authority and are therefore "illegal, unconstitutional, and ultra vires." (Id. ¶¶ 67, 77.) This claim also alleges that the MTA Board's "acquiescence in the Governor's ultra vires and unlawful actions was itself a violation of the TMA." (Id. ¶ 78.) Third, the complaint asserts a cause of action seeking injunctive and declaratory relief for the two substantive claims set out above. (Id. ¶¶ 82-83.)

On November 22, 2024, Defendants removed this case to federal court. (See Not. of Removal.) That same day, Plaintiffs moved to remand the action to state court. (See Pls.' Mot.) Defendants' notice of removal asserts that this action is removable because "it necessarily raises disputed and substantial federal questions that a federal forum may entertain without disturbing a Congressionally approved balance of responsibilities between the federal and state courts." (Not. of Removal at 4-5 (citing Gunn v. Minton, 568 U.S. 251, 258 (2013))). Defendants' notice of removal further states that this action "implicates uniquely federal interests and is governed by federal common law." (Id. at 5.) Plaintiff's remand motion argues that Plaintiff's complaint involves solely state claims against state Defendants and does not necessarily raise any disputed federal issues. (See Pls.' Mot.) Defendants opposed the motion on November 29, 2024, and Plaintiffs filed a reply in support of their motion for remand on December 4, 2024. (See Defs.' Opp.; Pls.' Repl.)

4

## II. DISCUSSION

### A. <u>Legal Standard</u>

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). A motion to remand for lack of subject matter jurisdiction may be brought at any time while the action is pending in federal court, pursuant to 28 U.S.C. § 1447(c). The removing party bears the burden of establishing the propriety of removal. <u>Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.</u>, 368 F.3d 86, 100 (2d Cir. 2004). Removal jurisdiction must be "strictly construed." <u>Syngenta Crop Prot., Inc. v. Henson</u>, 537 U.S. 28, 32 (2002). "[O]ut of respect for the limited jurisdiction of the federal courts and the rights of states," <u>In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.</u>, 488 F.3d 112, 124 (2d Cir. 2007), federal courts must "resolv[e] any doubts against removability." <u>State by Tong v. Exxon Mobil Corp.</u>, 83 F.4th 122, 132 (2d Cir. 2023).

The Court's analysis of whether a case "arises under" federal law is governed by the well-pleaded complaint rule. <u>State by Tong</u>, 83 F.4th at 132 (citing <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987)). Under that rule, federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint" and cannot be triggered "on the basis of a federal defense, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." <u>Id.</u> (cleaned up; quoting <u>Caterpillar</u>, 482 U.S. at 393). "In other words, the 'general rule' is that federal courts lack federal-question jurisdiction 'if the complaint does not affirmatively allege a federal claim.'" <u>Id.</u> (quoting <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 6 (2003)).

There are "exactly three situations" in which a complaint that does not allege a federal claim may still arise under federal law for purposes of federal subject matter jurisdiction. <u>Id.</u> at 133. They are: "(1) if Congress expressly provides, by statute, for removal of state-law claims;

5

(2) if the state-law claims are completely preempted by federal law; and (3) in certain cases if the vindication of a state-law right necessarily turns on a question of federal law." Id. (cleaned up; quoting Fracasse v. People's United Bank, 747 F.3d 141, 144 (2d Cir. 2014)).

**B.     Analysis**

    **1.     The Grable Exception Does Not Apply**

Defendants insist that the Court has federal-question jurisdiction over Plaintiff's second cause of action based on the third exception, as articulated in Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005). The Court disagrees.

The so-called Grable exception provides that a claim arises under federal law for purposes of the well-pleaded complaint rule when the state-law claim implicates significant federal issues. Grable, 545 U.S. at 312. This exception applies in only a "slim category" of cases. Gunn v. Minton, 568 U.S. 251, 258 (2013). Grable jurisdiction exists if a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance." Fracasse, 747 F.3d at 144 (citing Gunn, 568 U.S. at 258).

Plaintiffs' second cause of action alleges that, by publicly announcing that the revised congestion pricing plan would be implemented four days before the TBTA Board actually voted on the revised proposal, Governor Hochul usurped the TBTA's statutory authority under the TMA. (Compl. ¶¶ 74-77.) According to Plaintiffs, Governor Hochul's announcement four days before the TBTA vote rendered the TBTA vote a "mere formality" or a "sham." (Id. ¶ 75.) Plaintiffs further allege that the Governor's usurpation of the TBTA's statutory authority was "illegal, unconstitutional and ultra vires." (Id. ¶ 77.)

Defendants attempt to invoke Grable's narrow category of jurisdiction by arguing that federal law is necessarily implicated because Plaintiff's second cause of action alleges that "[n]either the TMA nor any other provision of law grant[s] the Governor any role whatsoever in

6

implementing or setting the terms of the congestion pricing program." (Defs.' Opp. at 3; see also Compl. ¶ 67.) Additionally, Defendants stress the fact that the TMA itself references federal law. Specifically, the TMA grants the TBTA "the power, subject to . . . applicable federal law to establish and charge variable tolls and fees" and "the power, subject to . . . applicable federal law to make rules and regulations for the establishment and collection of central business district tolls, fees, and other charges." N.Y. Veh. & Traf. Law §1704-a(1) (emphasis added). According to Defendants, Plaintiffs need to prove that the Governor does not have authority over the implementation of the Program under any federal or state laws in order to win on their second cause of action, thereby creating a substantial federal issue that is "necessarily raised." (Defs.' Opp. at 11.) The Court disagrees.

First, Plaintiffs' second cause of action does not "necessarily raise" a federal question. For a federal issue to be "necessarily raised," the "mere *presence* of a federal issue in a state cause of action" is inadequate; the question of federal law must be "a *necessary element* of one of the well-pleaded state claims." State by Tong, 83 F.4th at 140 (cleaned up). Here, Plaintiff's second of cause action does not necessarily raise a federal issue. To establish that the Governor usurped the TBTA's authority under the TMA, Plaintiffs must prove that (1) the TMA expressly granted the TBTA authority to adopt and implement congestion pricing, and (2) the Governor somehow usurped the TBTA's authority by announcing the implementation of the revised Plan four days before the TBTA Board voted to implement it. (See Compl. ¶¶ 65-67.) Contrary to Defendants' arguments, this does not necessarily require the Court to address any federal issues, as Plaintiffs' claim exclusively asserts that the Project was not lawfully implemented under state law.

At its core, Plaintiffs' claim that Governor Hochul usurped the TBTA's authority arises under New York State law. The TBTA's authority to set tolls is established under the TMA, which empowers the TBTA to "make rules and regulations for the establishment and collection of central

7

business district tolls, fees, and other charges." N.Y. Veh. & Traf. Law § 1704-a. Contrary to Defendants' arguments, the question of whether Governor Hochul usurped the authority of the TBTA under the TMA is distinct from the federal issue raised by Defendants. Plaintiffs' state law claims solely challenge the Governor's usurping of the TBTA's authority under state law. (See Pls.' Mot. at 2.) The Court concludes that analyzing whether the TBTA's authority was usurped is a state law question that is based on the TBTA's grant of authority under the TMA and does not necessarily turn on an analysis of federal law. See Connecticut v. RZ Smoke, Inc., 2024 WL 4501037, at *3 (D. Conn. Oct. 16, 2024).

In RZ Smoke, Inc., the plaintiff brought a consumer protection action under the Connecticut Unfair Trade Practices Act ("CUTPA") alleging that Defendants engaged in deceptive and unfair trade practices with respect to their marketing and selling of certain hemp products. Id. at *1. Since other state laws referred to the Agriculture Improvement Act of 2018 in defining "hemp," the defendants sought to remove the action to federal court, arguing that the claim arose under the federal statute. Id. at *2. The court held that the question of whether the products were "hemp" under federal law was ancillary to the "central question" of whether the products were deceptively packaged and labeled under the state statutes in question. Id. at *3. Therefore, the court held that while the content of the hemp products informed whether the state law violations had occurred, the actual issue was the manner in which Defendants had packaged and marketed the Products, which was a state law issue that did not require interpretation of the federal statute. Id.

Similarly, in this case, the federal issue raised by Defendants is ancillary to the central question of whether the Governor usurped the TBTA's authority to adopt and implement congestion pricing tolls. Because Plaintiffs do not affirmatively raise a question of federal law

8

that requires resolution in order to succeed on their second cause of action, a federal issue is not "necessarily raised" by Plaintiffs' complaint.

Defendants assert that various federal statutory provisions, when read together, somehow grant the Governor unilateral authority over New York State's decision to implement congestion pricing. According to Defendants, this federal issue is necessarily raised given the nature of Plaintiffs' second cause of action and because the TMA states that the grant of authority to the TBTA is "subject to applicable federal law." The Court disagrees. Defendants' claim that federal law grants the Governor such unilateral authority over New York's decision to implement congestion pricing is an affirmative defense and, thus, is not adequate to invoke the Grable exception. See City of New York v. Exxon Mobil Corp., 2024 WL 2091994, at *10 (S.D.N.Y. May 8, 2024) ("Defendants are confusing a defense . . . with an element of the [Plaintiffs'] claim[, and] . . . [t]he fact that Defendants may have a defense . . . is not adequate to establish the Grable exception."); see also New York v. Shinnecock Indian Nation, 686 F.3d 133, 140–41 (2d Cir. 2012). Because no "federal issue is . . . necessarily raised" by any of Plaintiffs' state law claims, the Grable exception is inapplicable here. Gunn, 568 U.S. at 258; see also Grable, 545 U.S. at 313–14.

Even assuming arguendo that a federal law issue is somehow "necessarily raised" by Plaintiffs' complaint, other Grable factors indicate that jurisdiction does not exist here.

Defendants' attenuated argument that the federal statutory provisions they cite "necessarily empowered [the Governor] with authority over the implementation of the Program" that is sufficient to defeat Plaintiffs' claims does not raise a "substantial" question. The inquiry as to whether a federal issue is "substantial" does not focus on "the particular parties in the immediate suit," but instead centers on "the importance of the issue to the federal system as a whole." Gunn, 568 U.S. at 260; see also Link Motion Inc. v. DLA Piper LLP (US), 103 F.4th 905, 914 (2d Cir. 2024). Thus, a substantial federal issue typically exists only in those exceptional cases that go

9

beyond the application of some federal law raised in connection with state-law claims and instead implicate broad consequences to the federal system or the nation as a whole. See Gunn, 568 U.S. at 263–64 (explaining that the "resolution of a patent issue in the context of a state legal malpractice action can be vitally important to the particular parties in that case," but that more is needed to "demonstrat[e] that the question is significant to the federal system as a whole"). An issue is more likely to be substantial if it "present[s] a nearly pure issue of law . . . that could be settled once and for all and thereafter would govern numerous . . . cases." Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co., 116 F.4th 106, 116 (2d Cir. 2024) (citing Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 700 (2006) (internal quotation marks and citation omitted). By contrast, federal issues that are "fact-bound and situation-specific . . . are not sufficient to establish federal arising under jurisdiction." Id. (citing Gunn, 568 U.S. at 263).

Even if a question of whether the Governor had some authority under federal law to implement the revised congestion pricing toll was necessarily raised, this question arises out of very specific and unique circumstances, including the specific New York statutory structure surrounding congestion pricing, the New York Legislature's enactment of the TMA, and the decisions of the Governor and the TBTA to expedite the implementation of congestion pricing after the November presidential elections . See Mulgrew v. United States Dep't of Transportation, 2024 WL 3251732, at *4 (S.D.N.Y. June 20, 2024) (detailing the history of congestion pricing legislation in New York). While Defendants argue that this case will "inform all future cases concerning the role of the state executive in negotiating and executing VPPP agreements under federal law," (Defs.' Opp. at 12), the Court disagrees. See  Sunvestment Energy Grp. NY 64 LLC, 116 F.4th at

10

117 (finding that Appellants' claims were "situation-specific" and that the resolution of the federal issue in those claims "would not inform a significant number of other cases).[5]

The fourth Grable requirement—namely, "that the exercise of federal-question jurisdiction over a state law claim not disturb any congressionally approved balance of state and federal judicial responsibilities"—"focuses principally on the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected." New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A., 824 F.3d 308, 316 (2d Cir. 2016) (emphasis added). This requirement ensures that federal courts will only find federal jurisdiction when it "is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Grable, 545 U.S. at 313-14. Although "federal questions that implicate substantial federal interests will often be appropriately resolved in federal rather than state court," when there is "a special state interest in a category of litigation" such claims are appropriately resolved in state court. New York ex rel. Jacobson, 824 F.3d at 316.

Plaintiffs' second cause of action asserts that the actions of the Governor of New York and the TBTA in approving the revised Program are ultra vires and unauthorized by state law. The traditional forum for a New York municipality and its citizens to raise claims that the acts of the Governor and a state agency are ultra vires and not authorized by state law is surely state court. There is also undoubtedly a "special state interest" that such claims be heard in New York State court.

---

[5] In Sunvestment, the Second Circuit noted that the substantiality prong of the four-part test governing whether state-law claims raise a federal question differs from the question of whether a complaint raises a substantial federal question under cases like Bell v. Hood, 327 U.S. 678 (1946). Sunvestment Energy Grp. NY 64 LLC, 116 F.4th at 116 n. 9. The Supreme Court has explained, regarding that line of cases, that, "[i]n the absence of diversity of citizenship, it is essential to jurisdiction that a *substantial* federal question should be presented." Shapiro v. McManus, 577 U.S. 39, 44 (2015) (internal quotation marks and citation omitted). In that context, a federal question may be substantial as long as it is not "essentially fictitious," "obviously frivolous," or "wholly insubstantial." Id. at 45 (internal quotation marks and citation omitted). Plaintiffs' papers appear to assert that the interpretation of federal law advanced by Defendants is frivolous. Because the Court finds that there is no federal question jurisdiction under the Grable framework, the Court need not inquire into the merits of this federal issue, which the parties can litigate in state court.

The crux of this cause of action is the question of whether the TBTA's November 18, 2024 approval of the revised Program is, as a matter of state law, somehow invalid in light of the Governor's November 14, 2024 statement. In this litigation, Defendants will surely assert that the second cause of action fails because the TBTA's November 18, 2024 vote is simply valid as a matter of state law because the TBTA was authorized to take that action under the language in the TMA that grants certain authority to the TBTA. While it is true that Defendants also assert that certain federal statutory provisions somehow grant unilateral authority to the Governor to approve and implement congestion pricing, this federal question is—given the centrality of the state law question—a secondary issue in this case that will only be litigated if Defendants do not prevail on their primary argument under state law.

In sum, exercising jurisdiction in this case would disturb the balance between state and federal responsibilities and, thus, the fourth element of the Grable framework is not satisfied.

Because the Grable exception is inapplicable here, Plaintiffs' motion to remand must be granted.

### 2. Federal Common Law Does Not Apply

In their notice of removal, Defendants argue that this action is removable because it "implicates uniquely federal interests and is governed by federal common law." (Not. of Removal at 5.) Defendants failed to raise this argument in their opposition to Plaintiffs' motion for remand, thereby abandoning it. See Jackson v. Fed. Exp., 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."). Even if Defendants had not abandoned this argument, it still fails.

The Supreme Court has explained that, as a threshold matter, a case must implicate "uniquely federal interests" for federal common law to apply. Boyle v. United Techs. Corp., 487

12

U.S. 500, 504 (1988) (internal quotation marks omitted).  As the Court explained in Boyle, such interests arise only in a few areas, such as: (1) the obligations to, and rights of, the United States under its contracts; (2) the liability of federal officers for official acts; and (3) civil liabilities arising out of federal procurement contracts relating to national defense.  See id. at 504–06.  Even when "uniquely federal interests" are implicated, federal common law applies only where there is a "significant conflict between some federal policy or interest and the use of state law."  O'Melveny & Myers v. F.D.I.C., 512 U.S. 79, 87 (1994); see Boyle, 487 U.S. at 504.  The requisite "significant conflict" occurs when the application of state law would run counter to a federal policy or interest.  See O'Melveny, 512 U.S. at 87–88; Pescatore v. Pan American World Airways, Inc., 97 F.3d 1, 11 (2d Cir.1996).  Absent a significant conflict, "a mere federal interest in uniformity is insufficient to justify displacing state law in favor of a federal common law rule."  B.F. Goodrich v. Betkoski, 112 F.3d 88, 90 (2d Cir. 1997).

Defendants have not cited any federal policy, law, or interest that purports to divest the state agency charged under state law with fixing toll amounts with the authority to do so.  Section 1 of the Value Pricing Pilot Program statute acknowledges the "participation of State and local governments and public authorities" in value pricing pilot programs but does not purport to designate who among these "State and local governments and public authorities" should be authorized to establish toll amounts.  (See Pls.' Repl. at 8.)  Defendants fail to make a specific showing that there is a "significant conflict" between New York state law and a federal policy or interest in this regard.  Therefore, federal common law does not apply to this case.

### III.   CONCLUSION

For the above reasons, Plaintiff's Motion to Remand is GRANTED.  Accordingly, the Court remands this action back to the Supreme Court of the State of New York, Nassau County.  The Clerk of the Court is directed to: (1) mail a certified copy of this order to the clerk of the

Supreme Court of the State of New York, Nassau County, pursuant to 42 U.S.C. § 1447(c); and (2) close this case.

**SO ORDERED.**

Dated:   December 19, 2024
         Central Islip, New York

                                                /s/ JMA
                                  JOAN M. AZRACK
                                  UNITED STATES DISTRICT JUDGE